**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| TODD CRANDELL, and<br>MICHAEL D. SHELL,<br><br>      Plaintiffs,<br><br>v.<br><br>GARY ARTHURS, ALEX STANCIOFF,<br>and MILEN MISHKOVSKY,<br><br>      Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br>4:06CV166<br>(Judge Schneider/Judge Bush) |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants' Motion to Dismiss or, Alternatively, Motion to Transfer Venue [Doc. No. 4]. Having considered the motion, Plaintiffs' response and Defendants' reply, the Court is of the opinion that Defendants' Motion to Dismiss should be granted.

Also pending before the Court is Plaintiffs' Motion for Leave to Amend Pleadings and Join Additional Defendants [Doc. No. 12]. Having considered the motion, Defendants' response, Plaintiffs' reply and Defendants' sur-reply, the Court is of the opinion the motion should be granted.

**Background**

Plaintiffs sued Defendants in their individual capacities in Collin County, Texas, alleging breach of contract and fraud. On April 21, 2006, Defendants removed the case from the 199th Judicial District Court, Collin County, Texas on the basis of diversity jurisdiction.

Defendants Arthurs, Stancioff and Mishkovsky are citizens and residents of the state of Florida. Arthurs and Stancioff have lived and worked in Florida at all times relevant to this litigation. Mishkovsky has been a resident and citizen of Florida since December 2005. Prior to December 2005, Mishkovsky lived in Washington, D.C. and worked in Florida and Virginia. During the time-period relevant to this lawsuit, Arthurs was the President of a company named Click Forward, and Stancioff and Mishkovsky were Vice Presidents of Click Forward.

Plaintiffs allege in their Original Petition that they claimed an ownership interest in Click Forward, and in order to resolve a dispute over the claimed ownership interest, the Defendants entered into an agreement with Plaintiffs. Plaintiffs allege that they performed their obligations under the agreement, but when Defendants sold Click Forward, they did not pay Plaintiffs 5% of the purchase price, which Plaintiffs allege they are entitled to under the agreement.

Arthurs founded Click Forward in 2003. Click Forward is in the business of providing local search engine advertising and tracking measurement services via the Internet. In March of 2005, the company StandardCall was introduced to Click Forward as a potential vendor. Subsequent to this introduction, Arthurs met with Plaintiff Crandell in Atlanta, Georgia. Arthurs also met Crandell at an industry conference in Forth Worth, Texas, which Arthurs attended in his capacity as President of Click Forward. Arthurs later met with the employees of StandardCall on behalf of Click Forward at StandardCall's offices in Frisco, Texas. Click Forward and StandardCall began to discuss entering into a working agreement, and on June 17, 2005, the two entities entered into an Operating Agreement. The Operating Agreement is not the subject of this lawsuit. Arthurs and Stancioff did exchange emails and telephone calls with Crandell and Shell,

who were located in Texas, and those communications were made in their capacities of employees and officers of Click Forward.

Arthurs has made six trips to Texas in the past ten years, and each trip was made in the course and scope of his employment with Click Forward and as President of Click Forward. Stancioff has traveled to Texas one time in the past ten years, and this trip was in the course and scope of his employment with an employer other than Click Forward. Within the last ten years, Mischkovsky has only been in Texas to change planes in a Texas airport. Each time Mischkovsky has changed planes in a Texas airport, he has been traveling in the course and scope of his employment with and in his capacity as Vice President of Click Forward.

Defendants have never: lived in Texas; owned any real or personal property in Texas; leased any real or personal property in Texas; held a security interest in any real or personal property in Texas; opened or maintained bank accounts in Texas; opened or maintained an office or other business premises of any kind in Texas; hired any employees, servants or agents in Texas; maintained any telephone, facsimile, telex, or other communication facilities of any kind in Texas; paid or owed any taxes to the State of Texas or any of its political subdivisions; been required to maintain, or maintained, a registered agent for service in the State of Texas; engaged in any business in their individual capacities in Texas; entered into or negotiated any contracts or agreements in their individual capacities with a Texas resident in which either party was to perform the contract in whole or in part in the State of Texas; committed a tort in whole or in part in the State of Texas; or been a party to a lawsuit in the Texas other than in connection with this case.

I.  **Personal Jurisdiction**

A federal court has personal jurisdiction over a non-resident to the same extent that a state court in that forum has jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir. 1994) (citations omitted).  However, Due Process limits the exercise of personal jurisdiction over nonresident defendants. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945).  Two factors limit the reach of personal jurisdiction: (1) the state long arm statute; and (2) the Due Process Clause of the Fourteenth Amendment. *Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir. 1994).  Because the Texas long arm statute extends to the limits of the Due Process Clause, this Court need only consider the Constitutional analysis. *Id*.

Due Process limits the exercise of personal jurisdiction over nonresident defendants to cases in which they purposefully establish "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945).  The minimum contacts requirement may be further subdivided into "general" and "specific" personal jurisdiction.

"General" personal jurisdiction arises when a non-resident defendant's contacts with the forum state are "continuous and systematic."  Personal jurisdiction attaches to the nonresident defendant even when his contacts in the forum state do not give rise to the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868, 1872 n.8 (1984).

"Specific" personal jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Wilson*, 20 F.3d at 647 (*citing Helicopteros Nacionales*, 104 S. Ct. at 1872).  This analysis is not mechanical, but rather

requires the court to consider the precise nature of the nonresident's activities and whether, given the nature of those activities, the defendant could reasonably expect to be haled into court in the forum state. *Burger King Corp. v. Rudzewicz*, 105 S. Ct. 2174, 2183 (1985).

The second prong of the Due Process analysis requires that the exercise of jurisdiction over a nonresident defendant comport with traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court*, 107 S. Ct. 1026, 1033 (1987) (*citing International Shoe*, 66 S. Ct. at 158). This requires the court to consider a number of factors: (1) the defendant's burden in defending the suit in the forum state; (2) the forum state's interest in the suit; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of the controversy; and (5) the state's interest in furthering fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 421 (5th Cir. 1993) (*citing Asahi*, 107 S.Ct. at 1032); *World Wide Volkswagen Corp. v. Woodson*, 100 S.Ct. 559 (1980); *Irving v. Owens-Corning Fiberglass Corp.*, 864 F.2d 383, 387 (5th Cir. 1989).

## Discussion

Plaintiffs have sued Defendants in their individual capacities; therefore, in order for the Court to exercise personal jurisdiction over the Defendant, it must first find that the individual defendants satisfy the minimum contacts prong of the personal jurisdiction analysis.

**A.**     **General Jurisdiction**

In order to establish minimum contacts through general jurisdiction, Plaintiffs must establish that the individual Defendants' contacts with the forum state were continuous and systematic. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 104 S. Ct. 1868, 1872 n.8 (1984). Defendants argue that any contacts they made with Texas were made in the course and

scope of their employment with Click Forward or as officers of Click Forward, and as a result, the fiduciary-shield doctrine applies. The Court agrees. The fiduciary-shield doctrine "holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual" even if the state could exercise personal jurisdiction over the corporation.[1] *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).

    Defendant Arthurs's contacts with Texas in the last ten years are limited. He has traveled to Texas six times, and each trip to Texas was made in his capacity as the President of Click Forward. Arthurs attendance at a trade show on behalf of Click Forward and his meetings with Plaintiffs, who represented StandardCall, in an effort to develop a business relationship between Click Forward and StandardCall were clearly made in his corporate capacity with Click Forward. Arthurs's contacts with Texas were not made upon any basis that would give rise to in personam jurisdiction over Arthurs in his individual capacity. Accordingly, this Court cannot exercise general personal jurisdiction over Defendant Arthurs.

    Defendants Stancioff and Mishkovsky's contacts with Texas were even more attenuated. A defendant cannot be haled into a court in a particular jurisdiction based only upon random, fortuitous or attenuated contacts with that jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Stancioff made one trip to Texas in his capacity as a representative of another employer, which is simply not enough to constitute continuous and systematic contacts with the forum state. Mischkovsky has only been in Texas to change planes at Texas airports, which is insufficient to

---

[1] Courts have recognized an exception to the general rule that jurisdiction over an individual cannot be predicated on personal jurisdiction over the corporation when the corporation is the alter ego of the individual. *Stuart*, 772 F.2d at 1197. However, Plaintiffs do not appear to argue that Click Forward operates as Defendants' alter ego, nor do Plaintiffs set forth any facts or evidence to support an alter ego theory.

bring him under the general personal jurisdiction of this Court. Further, Plaintiffs do not allege that Stancioff or Mishkovsky had any contacts with Texas that fell outside the scope of their roles as Vice Presidents of Click Forward; therefore, the fiduciary-shield doctrine applies to Stancioff and Mishkovsky as well. Accordingly, this Court cannot exercise general personal jurisdiction over Stancioff and Mishkovsky.

**B.     Specific Jurisdiction**

In the absence of continuous and systematic contacts sufficient to establish general jurisdiction, the Court must find that specific jurisdiction exists in order to exercise personal jurisdiction over the defendants. Minimum contacts with the forum state are established through specific jurisdiction when the nonresident's contacts with the forum state arise from or are directly related to the cause of action. *Wilson*, 20 F.3d at 647. Plaintiffs appear to argue that because Defendants negotiated the alleged agreement that is the subject of this lawsuit with Plaintiffs while Plaintiffs were in Texas, the Court should exercise specific jurisdiction over Defendants. However, the Fifth Circuit has held that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws." *Stuart*, 772 F.2d at 1193 (citing *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d. 851 (1984)). Thus, the communications between Defendants and Plaintiffs that gave rise to the alleged agreement are not sufficient to support an exercise of specific personal jurisdiction over Defendants by this Court. Additionally, any communications by the Defendants regarding the alleged agreement would have been made in the Defendants' capacities as officers of Click Forward, thus invoking

the fiduciary-shield doctrine. Accordingly, Defendants' Motion to Dismiss for lack of personal jurisdiction should be granted.[2]

## II. Leave to Amend Pleadings

Plaintiffs filed their Motion for Leave to Amend Pleadings and Join Additional Defendants on November 30, 2007. The district court has discretion to either grant or deny a motion for leave to amend. *Rolf v. City of San Antonio*, 77 F.3d 823 (5th Cir. 1996). Leave to amend should be "freely given" as required by the Federal Rules of Civil Procedure. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). However, leave to amend is not automatic under Federal Rule of Civil Procedure 15(a). *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998) (citations omitted). In determining whether leave to amend should be granted, the court may consider the following factors: (1) undue delay; (2) the movant's bad faith or dilatory motive; (3) repeated failure to correct deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment. *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962)).

While Plaintiffs' motion for leave could presumably have been filed earlier, the postponement in proceeding with discovery in this lawsuit has contributed to the delay. The Court did not enter a stay of discovery in this lawsuit, and discovery could have proceeded. Accordingly, Plaintiffs' delay in filing their motion for leave to amend is not undue. Plaintiffs have not shown bad faith or a dilatory motive in filing their motion for leave to amend, and this

---

[2]Because Defendants have not satisfied the minimum contacts prong of the analysis, the Court need not address whether the exercise of jurisdiction over the Defendants would offend traditional notions of fair play and substantial justice.

is the first time Plaintiffs have sought leave to amend their pleadings. Defendants will not be prejudiced by the Court's granting of this motion. The Court is of the opinion that Click Forward is a proper party to this lawsuit. As demonstrated in Defendants' Motion to Dismiss, the individual Defendants' involvement and communications with Plaintiffs were made in their capacities as officers of Click Forward. Accordingly, Plaintiffs' motion for leave to amend should be granted.

## Recommendation

Based upon the foregoing, it is the Court's recommendation that the Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) should be GRANTED.

The Court further recommends that Plaintiffs' Motion for Leave to Amend Pleadings and Join Additional Defendants should be GRANTED.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 21st day of December, 2006.**

-9-

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE